UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLARENCE WALKER and WALKER
INSURANCE AGENCY L.L.C., a Michigan
Limited Liability Company,

Case No. 2:08-cv-14574

HONORABLE STEPHEN J. MURPHY, III

      Plaintiffs,

v.

BROOKE CORPORATION, a Kansas
Corporation, ALERITAS CAPITAL
CORPORATION, a Delaware Corporation,
and BROOKE CAPITAL CORPORATION,
a Kansas Corporation,

      Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT (docket 15)

The plaintiffs in this matter, Clarence Walker and the Walker Insurance Agency LLC, have moved the Court for a default judgment against defendant Aleritas Capital Corporation. On November 11, 2009, the Court held a hearing on plaintiffs' motion for a default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court grants the plaintiffs' motion for default judgment and will enter judgment in favor of plaintiffs and against defendant Aleritas in the sum of $182,770.01.

### BACKGROUND

This is a suit by Clarence Walker and the Walker Insurance Agency, LLC against several corporations that Walker alleges defrauded him into quitting his job and purchasing an insurance agency and breached various contracts. Defendants Brooke Corporation and Brooke Capital Corporation are Kansas corporations with their principal place of business in Overland Park, Kansas, and defendant Aleritas Capital Corporation ("Aleritas") is a

Delaware Corporation with its principal place of business in Overland Kansas.  Walker alleges that agents and representatives of Brooke and Aleritas falsely represented the value of the agency Walker was purchasing and that financing would be available through Aleritas, which was formerly known as Brooke Credit Corporation.  Walker alleges that Aleritas failed to comply with its contractual obligation to fund the purchase after he had begun selling insurance for Brooke, signed the franchise agreement and the agreement to purchase the agency and published the plaintiffs names as Brooke's agent of record.  Walker has sued for misrepresentation, fraud, privacy torts of false light and misappropriation, breach of contract, unjust enrichment, and violation of the Michigan Franchise Investment Law.  Walker seeks an injunction prohibiting the defendants from issuing insurance policies under Walker's license or holding out Walker as their agent, damages and attorneys fees.

**PROCEDURAL POSTURE**

This suit was filed on October 28, 2008.  On November 13, 2008, plaintiff filed certificates of service for all defendants.  Two weeks later, on November 26, 2008, plaintiffs requested a clerk's entry of default, which default was entered that day.

On December 9, 2008, the plaintiffs moved for a default judgment as to Aleritas Capital Corp. (Docket entry 8).  Plaintiffs moved for default only as to Aleritas apparently because the other defendants, Brooke Corporation and Brooke Capital Corp., are in bankruptcy.  Following a telephonic hearing, the Court denied plaintiffs' initial motion for a default judgment on the grounds that service on Aleritas was not properly effected under either Rule 4 of the Federal Rules of Civil Procedure or MCR 2.105.  The Court ordered the plaintiff to make alternate service consistent with the Federal Rules of Civil Procedure.  The

plaintiffs have done so, and now moved again for a default judgment. Aleritas has failed to respond to the motion for default judgment and the time for response has lapsed.

The Court held a hearing on plaintiff's motion for a default judgment on November 11, 2009. At the hearing, the Court expressed concern that the plaintiff had failed to support his motion with adequate evidence as to damages. The plaintiff filed a supplemental brief in support of his motion for default judgment on December 1, 2009.

**ANALYSIS**

Aleritas did not plead or otherwise defend in this action after being served, so the Clerk properly entered default as to Aleritas. See Fed. R. Civ. P. 55(a).

Rule 55(b)(2) provides that where the plaintiff's claim is not for a sum certain, the party must apply to the Court for a default judgment. The rule provides that the Court

> may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
>
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

Federal Rules of Civil Procedure Rule 55(b)(2).

Upon an entry of default, the complaint's factual allegations regarding liability are taken as true, but allegations about the amount of damages must be proved. *National Satellite Sports, Inc. v. Mosley Entertainment Inc.*, 2002 WL 1303039 (E.D. Mich. May 21, 2002). The following facts in the Complaint are therefore taken as true for purposes of establishing Aleritas' liability to the plaintiffs but not for the purposes of proving damages:

Plaintiff Clarence Walker is a resident of Michigan. Complaint ¶1. Plaintiff Walker Insurance Agency, LLC ("Walker Agency") is a Michigan limited liability corporation with its principal place of business in Roseville, Michigan. *Id.* ¶ 2. Defendant Brooke Corporation

is a Kansas Corporation with its principal place of business in Overland Park, Kansas. *Id.* ¶ 3. Defendant Aleritas Capital Corporation ("Aleritas") is a Delaware Corporation with its principal place of business in Overland Park, Kansas. *Id.*¶ 4. Defendant Brooke Capital Corporation ("Brooke") is a Kansas corporation with its principal place of business in Overland Park, Kansas. *Id.* ¶ 5.

In or about February 2008, Walker became aware through internet advertising that Brooke was looking for agents to purchase existing insurance agency franchises from Brooke. Complaint ¶ 12. Walker entered into negotiations to purchase a Brooke insurance agency franchise. *Id.* ¶ 13. Brooke's agents and representatives misrepresented the value of the agency Walker was purchasing, the historical commissions earned by the agency Walker was to purchase, the purchase price of the agency Walker was to purchase, the opportunity to negotiate the purchase price of the agency, and that financing would be available to Walker Agency, an LLC which Walker formed for the purpose of buying the Brooke franchise, from Aleritas, a subsidiary of Brooke. *Id.* ¶ 14.

Based upon these false representations, plaintiffs Walker and the Walker Agency entered into several contracts with the defendants, including a March 13, 2008 letter of commitment, an agreement to purchase agency assets with Lynch Financial Services (the former owner of the agency) and a franchise agreement with Brooke dated March 28, 2008. Complaint ¶ 15. In reliance on the defendants' misrepresentations, Walker and the Walker Agency entered into the Franchise Agreement and Agreement for Purchase of Agency Assets, and Walker gave up his job and forfeited his ability to work as an insurance agent or producer for his former employer or any other agency. *Id.*, ¶ 16. Walker and the Walker Agency purchased the Brooke franchise and the agency in Roseville, Michigan in the belief that the purchase price had been funded by Aleritas, and Brooke appointed the plaintiffs

4

as agents of record for a number of insurance companies selling insurance in Michigan. *Id.* ¶ 17. As to Aleritas, plaintiffs were led to believe that the nearly $600,000 purchase price of the franchise agency, including the physical plant and book of business, would be fully financed by Aleritas, Brooke's financing arm, on March 28, 2008. *Id.* ¶ 18. Aleritas did not comply with its contractual obligations and did not fund the purchase. *Id.* ¶ 19. Plaintiffs did not learn of Aleritas' breach until they had begun selling insurance for Brooke, signed the franchise agreement and agreement to purchase the agency, and Brooke had appointed plaintiffs as its agents to sell insurance from several no-fault auto insurers and published plaintiffs' names as agents of record for Brooke. *Id.*

Plaintiffs complaint alleges seven counts of fraudulent misrepresentation, innocent misrepresentation, violation of the Michigan Franchise Investment Law, silent fraud, false light invasion of privacy and misappropriation, breach of letter of commitment and unjust enrichment. As to Aleritas, the major claim is Count VI, Breach of Letter of Commitment. In Count VI, plaintiffs allege that the Walker Agency and Aleritas entered into a letter of commitment on March 18, 2008 in which Aleritas promised to lend to the plaintiff, at the rates and under the conditions specified, the amount of $593,534. Complaint ¶ 50. Plaintiffs allege that they complied with all conditions precedent to the loan and all other contractual terms, but Aleritas breached its contract to fund the loan on March 28, 2008. *Id.*, ¶¶ 51-52. Plaintiffs allege that Aleritas knew that the funding promised in the letter of commitment was essential to plaintiffs' ability to pay for and operate the insurance agency and franchise purchased from Brooke at the time Aleritas breached its contract and further knew that its breach would cause significant economic damage to plaintiffs due to plaintiffs' inability to fund the operations of the agency. *Id.* ¶ 53. Plaintiff allege that Aleritas' breach caused Brooke to refuse to permit the plaintiffs to own and operate the agency, resulting

5

in loss of income, loss of earning capacity, loss of invested monies and expenses and attorneys fees.  *Id.*, ¶ 54.

Plaintiffs have submitted two affidavits of Clarence Walker in support of their motion for a default judgment.  In his first affidavit, Walker attests that in February 2008 he was an insurance agent and producer licensed in the State of Michigan working for AAA of Michigan.  Walker Aff. ¶ 3.  He negotiated the acquisition of a Brooke Capital Corporation franchise by Walker Insurance Agency, an limited liability company that he established for that purpose.  *Id.* ¶ 4.  On March 18, 2008, Aleritas entered into an agreement with the Walker Agency to loan it $ 593,534 necessary to consummate the transaction.  *Id.* ¶ 5.  After signing all the transaction documents and in reliance thereon, Walker resigned his employment with AAA of Michigan.  *Id.* ¶ 6.  Walker and the Walker Agency were appointed as Brooke agents of record with the State of Michigan for a number of insurance companies, which precluded them from selling insurance for those companies on behalf of anyone else.  *Id.* ¶ 7.  Walker later discovered that Aleritas had failed to provide the Walker Agency with the $593,534 in breach of its contract and, as a result, the Walker Agency did not own the Brooke franchise.  *Id.* ¶ 8.  Because Brooke had already appointed Walker and the Walker Agency as its agents of record in Michigan, Walker was unable to open his own independent agency and sell insurance in the State of Michigan on behalf of anyone else for eight months.  *Id.* ¶ 9.

In his second affidavit, Walker avers that defendants Brooke and Aleritas fraudulently represented that the Brooke insurance franchise that Walker was attempting to acquire was extremely valuable, with a book of business that yielded average profits of $14,677.18 per month, or $176,126.10 per year.  Second Walker Aff. ¶ 7.  Walker avers that, based upon these fraudulent representations, he resigned his employment with AAA of Michigan in April

2008. *Id.* ¶ 9. After Walker resigned, he was unemployed for eight months, from May to December 2008. *Id.* ¶ 13. In January, 2009, Walker began selling insurance independently. *Id.* ¶ 14. Walker's independent agency only earns $4000 per month and $48,000 per year, which is approximately $1,000 less than Walker had been making at his old job at AAA. *Id.* ¶ 15. Walker also avers that he had suffered stress, worry and embarrassment as a result of Aleritas' actions. *Id.* ¶ 23.

**ANALYSIS**

In their initial motion for default judgment, plaintiffs seek as damages for Aleritas' breach the $593,534 amount that Aleritas promised to loan plaintiffs under the March 18, 2008 letter of commitment, plus $30,000 that Walker withdrew from his savings account and $12,000 he withdrew from his pension plan in order to pay his bills. See Walker Aff. ¶ 10. In their supplemental brief, plaintiffs seek as damages lost profits from the franchise they were prevented from opening as a result of defendants' breach, damages for mental distress, and reliance damages. Upon review of the entire record of this case and the relevant case law in Michigan, the Court finds that plaintiffs are entitled to damages for acts done in reliance on Aleritas' representations and breach of its agreement to loan money, but are not entitled to the amount Aleritas promised to loan the plaintiffs, nor are they entitled to lost profits, damages for mental distress, or the amount Walker withdrew from his savings to pay his bills.

First, the Court notes that plaintiffs are not entitled to damages for mental distress, because those damages are not recoverable in an action for breach of an agreement to loan money, and plaintiffs' complaint does not state a valid tort claim against Aleritas. Accepting all factual allegations regarding liability as true, Walker's allegations of fraudulent misrepresentation, innocent misrepresentation, and silent fraud do not state a valid claim

7

as to Aleritas. Walker's complaint is devoid of any allegations that Aleritas, or its agents committed fraud or misrepresentation in inducing Walker to enter into the franchise agreement. Rather, the factual allegations in the complaint establish that Aleritas promised to provide the financing necessary for Walker's purchase of the agency but failed to provide such financing. These allegations do not state any valid tort claim against Aleritas.

Because plaintiffs have failed to state a valid tort claim against Aleritas, damages are only appropriate for plaintiffs' claim of breach of an agreement to loan money. "[T]he measure of damages where one fails to advance money as agreed is the excess in interest which the borrower is compelled to pay to procure the money elsewhere." *Alderton v. Williams*, 139 Mich. 296, 300 (1905). This is the general rule because "[i]n such cases the law presumes that the borrower can obtain money elsewhere, and the increased rate of interest therefore furnishes full compensation for his damages." *Id.* Applying this rule to the facts at hand, Walker cannot claim as damages the $593,534 that Aleritas failed to loan him in violation of the letter of commitment - it is clear from the relevant case law that this is an inappropriate measure of damages. As a general rule, damages for breach of a contract to lend money for a definite period of time is not the amount agreed to be loaned or advanced but rather the cost of getting another loan, consisting principally of the difference between the interest that the borrower contracted to pay and what he was compelled to pay to procure a replacement loan. *Alderton*, 139 Mich. 300. There is no evidence in the record, however, as to what, if any, increased interest rate plaintiffs would be required to pay elsewhere, and therefore the Court cannot award this element of damages.

There is, however, an exception to the general rule, which permits a borrower to recover certain expenses as consequential damages, provided they were costs

8

contemplated to result from the breach of the loan agreement. Williston on Contracts § 66:101 (4th Ed.). Specifically, "if the lender knew that the borrower intended to use the loan proceeds for a purchase, or if, from the circumstances, the lender should reasonably have expected that the borrower would make outlays or incur liability on the faith of the agreement to furnish him or her with the loan, the borrower may recover whatever was lost as a consequence of the expenditures and liabilities made or incurred upon the lender's breach of the loan agreement." *Id.* These consequential damages may also include lost profits if they are capable of reasonable ascertainment. *Id.* This is consistent with Michigan law that damages recoverable for breach of contract are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made. *Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 414 (1980).

Plaintiffs' complaint alleges that Aleritas' breach caused Walker and the Walker Agency to incur consequential damages that include loss of income, loss of earning capacity, and attorneys fees. The attorneys fees sought are impermissible under Michigan law absent an express legal exception, which does not apply here. *Fleet Business Credit v. Krapohl Ford Lincoln Mercury Co.*, 274 Mich. App. 584, 589 (2007). The damages for loss of income and loss of earning capacity, however, are recoverable upon proper proof because, under the facts of this case, the lender knew that the borrower had a special purpose for the funds and therefore should have reasonably anticipated that the losses would result from the breach of the agreement to loan money.

Walker asks the Court to award him lost future profits in the amount of $14,677.18 per month or $176,126 per year for 19 years. The Court will not award future lost profits because there is not sufficient evidence in the record to support such an award. While a new business may recover anticipated lost profits for a breach of contract, *Fera v. Village*

9

*Plaza, Inc.*, 396 Mich. 639, 643 (1976), "'(i)n order to be entitled to a verdict, or a judgment, for damages for breach of contract, the plaintiff must lay a basis for a reasonable estimate of the extent of his harm, measured in money.'" *Id.* (citing 5 Corbin on Contracts, s 1020, p. 124). In the present case, Walker has offered no proofs that would take the issue of lost profits out of the category of speculation and conjecture. Walker's sole basis for claiming future profits of $176,126 per year is the projections supplied by defendant Brooke. Walker claims in his complaint, however, that these same projections are misrepresentations by Brooke of the value of the agency, which is inconsistent with asking this Court to use those same inflated figures when calculating damages. Moreover, Walker seeks the $176,126 figure for the next 19 years, at which time he would reach the age of 65 and retire. This number was speculative at the time Walker and Aleritas entered into their agreement, and is no less speculative now. The Court finds that there is no evidence in the record that would support a claim for lost future profits that would not be wholly speculative, and therefore the Court will not award future lost profits as damages.

There is, however, sufficient evidence in the record that will allow the Court to award reliance damages to Walker. The facts in the record show that, in reliance on the contract to loan money, Walker resigned his employment with AAA, at which time he was earning $5,000 per month. After resigning, Walker and Walker Insurance Agency LLC were appointed as Brooke's agent of record, and as such, Walker was unable to sell insurance in the State of Michigan for eight months. Walker claims that based upon these facts he is entitled to $40,000 ($5,000 per month for 8 months) for the eight months that he was unemployed, and the Court agrees. Walker is also entitled to past damages of $11,000, which represents the $1000 difference between what he would have earned as an employee for AAA and what he earned selling insurance at his independent insurance

agency in the 11 months following his removal as Brooke's agent of record. Thus, the Court will award plaintiffs $51,000 in past damages.

Walker is also entitled to future reliance damages to the extent supported by the evidence before the Court. Walker seeks $228,000 in future reliance damages, which amount Walker asserts represents the $1000 per month shortfall he will suffer selling insurance through an independent agency, rather than working for AAA for the next 19 years. While the Court agrees that Walker is entitled to some compensation for future reliance damages, it disagrees with Walker's calculation. First, the 19 years that Walker claims he is entitled to compensation for is inappropriately speculative. Rather, the Court will limit Walker's future damages to 15 years, which is the life of the loan contemplated by the parties. Second, future damages awarded pursuant to Michigan law must be reduced to present cash value. *Pontiac School District v. Miller, Canfield, Paddock & Stone*, 221 Mich. App. 602, 630 (1997). As a default, Michigan courts use a simple five percent interest rate for reducing future damages to present cash value. *Id.* Using the formula endorsed by the Michigan Court of Appeals and a 15-year-period, the Court finds that Walker is entitled to $131,770.01 present cash value for future damages.

Walker also claims he is entitled to economic damages under the Michigan Franchise Investment Law ("MFIL"), MCL § 445.1505. Walker further claims that those damages should be calculated using section 31 of the MFIL. As detailed below, the Court will not award damages pursuant to the MFIL because plaintiffs do not have a valid right of action against Aleritas under the MFIL.

Section 5 of the MFIL provides in relevant part that:

A person shall not, in connection with the filing, offer, sale, or purchase of any franchise, directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.

11

(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

MCLA § 445.1505.

Section 31 provides:

A person who offers or sells a franchise in violation of section 5 or 8 is liable to the person purchasing the franchise for damages or rescission, with interest at 6% per year from the date of purchase until June 20, 1984 and 12% per year thereafter and reasonable attorney fees and court costs.

MCL § 445.1531(1).

Section 34 of the MFIL provides:

Except as explicitly provided in this act, civil liability in favor of any private party shall not arise against a person by implication from or as a result of the violation of a provision of this act or a rule or order hereunder. Nothing in this act shall limit a liability which may exist by virtue of any other statute or under common law if this act were not in effect.

MCL § 445.1534.

Section 31 imposes liability on a franchisor that offers or sells a franchise to a franchisee in violation of the MFIL. *Franchise Management Unlimited, Inc. v. America's Favorite Chicken*, 221 Mich. App. 239, 250 (1997). In *Franchise Management*, the Michigan Court of Appeals addressed the question of who can be held liable in a private right of action brought pursuant to the MFIL. In that case, a franchisor would not approve the sale of a franchise until the franchisee agreed to release the franchisor from all claims against the franchisor as provided in the franchise agreement. *Id.* at 242. The franchisor brought suit requesting a declaratory ruling that the franchisor's failure to execute a release was not good cause under MFIL and asserted a claim for damages under § 5 of the MFIL. *Id.* The court held that the plaintiff had no MFIL cause of under these facts, because the

franchisor was not selling or offering to sell a franchise when the franchisee claimed it violated § 5 and the franchisee was not the person purchasing the franchise, instead, the franchisee was the person selling the franchise as defined by the MFIL. *Id.* at 250.

In reaching its decision, the court held that "[s]ection 31 creates a cause of action for 'a person purchasing the franchise' against a 'person who offers or sells a franchise in violation of section 5' of the MFIL." Id. The court also held that the "statute limits claims to those brought against a 'seller' who violates § 5 in connection with the sale." *Id.* (emphasis added). Finally, the court noted that the franchisee had no remedy under the MFIL because he was not purchaser under the MFIL and the Legislature in section 34, expressed its clear intent that the courts not imply a private right of action to remedy violations of the MFIL. *Id.* at 252.

In the present case, Walker asserts that Aleritas is liable under the MFIL. While Walker's MFIL claim may be meritorious as to Brooke, given that it was a "seller" under the MFIL, the question before the Court centers on Aleritas, the financing company. Like the defendant in *Franchise Management*, Aleritas was not the seller of the franchise. Instead, accepting all factual allegations in the complaint as true, Aleritas' sole purpose with respect to the franchise agreement was providing the $593,534 necessary to complete the acquisition. While the Court is to accept the complaint's factual allegations regarding liability as true, the complaint does not allege facts that indicate that Aleritas was the seller, nor does it allege facts that establish that Aleritas and Brooke should be treated as interchangeable for purposes of MFIL-liability. Because Aleritas was not a seller of the franchise, Walker does not have a viable private cause of action against Aleritas under the MFIL and is not entitled to damages under the MFIL.

## CONCLUSION

**WHEREFORE**, it is hereby **ORDERED** that plaintiffs' motion for a default judgment against defendant Aleritas is **GRANTED**. Judgment will be entered in favor of plaintiffs and against defendant Aleritas in the sum of $182,770.01.

**SO ORDERED**.

                                    s/Stephen J. Murphy, III
                                    STEPHEN J. MURPHY, III
                                    United States District Judge

Dated: March 30, 2010

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2010, by electronic and/or ordinary mail.

                                    Alissa Greer
                                    Case Manager